**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION**

UNITED STATES OF AMERICA,    )
    )
    Plaintiff,    )
    v.    )  Criminal Action
THOMAS E. BROOKS,    )  No. 05-03142-02-CR-S-DW
    )
    )
    Defendant.    )

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Defendant filed a Motion to Suppress Evidence, in which he asserts that evidence seized as a result of a vehicular stop should be suppressed. The United States filed its response. The matter was set for an evidentiary hearing, which was held before the undersigned on November 22, 2006. Defendant was present with counsel, Stuart P. Huffman, and the United States was represented by Randall D. Eggert, Assistant United States Attorney.

The parties agreed that the evidence from this case is the same as in a case previously ruled involving a co-defendant, United States v. Young, 05-03142-03-CR-S-DW. The government requested that the Court take judicial notice, and introduced Exhibit 1, a copy of the traffic summons introduced at the Young suppression hearing, and the transcript of the Vonnie Young hearing, Exhibit 2, into evidence. Counsel for defendant stated that he wished to cross-examine the two officers who testified at the Vonnie Young hearing, Officer Shook and Detective Holmes.

In addition to the evidence previously introduced, the Court will consider the cross-examination testimony adduced at the hearing in rendering the report and recommendation in this

1

case.

On cross examination, Officer Michael Shook, Patrol Officer with the Republic Police Department, stated that on June 23, 2005, he was assisting Officer Holmes with the stop in question. He learned about the case on that date. He understood that information had come from a confidential informant regarding a drug transaction in Republic, Missouri. He was not given the suspect's name, but was given a description of clothing and the vehicle, which was an older model, green Chevy Cavalier, that had been wrecked. He was also advised that the suspect was a white male. He was told there might be one or multiple individuals in the vehicle. He had not dealt with the particular confidential informant before, so he did not have an opinion regarding the reliability. Regarding the clothing description, he was told the individual was wearing black pants and a black shirt. The vehicle was expected to be coming from Highway MM or Highway 60, but there was nothing definite told to him. He got involved at about 2:00 p.m. Officer Holmes told him it might be possible that a narcotics transaction would occur at that location, and he needed assistance. Eventually, a vehicle drove in to the parking lot at the Express Lane in Republic, Missouri, and pulled up next to the confidential informant's vehicle, which was a Grand Prix, of which he was previously advised by Officer Holmes. The occupants were in a white Toyota Camry. He saw the driver exit the Toyota, and eventually saw three individuals, one going towards the confidential informant's vehicle, and the other two towards a park. He was about 30 yards away, and the subjects were about 30 yards from the two vehicles. As he observed them, the two subjects going towards the park looked nervous, were looking around, checking over their shoulders, and looked like they were conducting "counter-surveillance." He thought they were more observant of their location than ordinary citizens would be. He acknowledged that they were nervous, but not

extremely nervous.  A person, later determined to be Ray Schaffer, walked directly towards the confidential informant's vehicle.  The ones going to the park were defendant and Vonnie Young. He did not see any contact occurring between those two individuals and Mr. Schaffer, nor did he see any transaction that occurred between Mr. Schaffer and the confidential informant. He observed that Mr. Schaffer spent about two minutes in the confidential informant's car; then walked over to defendant and Ms. Young; conversed with them about 30 seconds; walked back over to the car and talked to the informant for another 30 seconds; and then all three walked back and got into the Camry.  The over-all encounter lasted about five minutes.   He admitted that the vehicle did not match the description that had previously been given to him.   It wasn't the same make or color, hadn't been wrecked, and had Arizona plates.  As the vehicles departed the area, Officer Holmes told him via cell phone that he needed to follow them because Mr. Schaffer was still in the vehicle, and the drug transaction had not occurred, so presumably, the drugs were still there as well.  Officer Shook admitted that he had not seen any evidence of drug transactions or anything that would constitute a crime at this point.  He believed, however, that any reasonable officer would have followed the individuals, because their actions in contacting the confidential informant created reasonable suspicion that criminal activity might be occurring.

As he followed the vehicle, he noted that it was following too closely to the vehicle in front of it, and he pulled it over for this traffic offense.  It was also traveling 65 in a 60 miles per hour zone.  He agreed that some other vehicles were traveling at this rate of speed, who were not pulled over.  Officer Shook was in a marked vehicle, while Officer Holmes was in an unmarked vehicle. Officer Shook  was about six-car-lengths behind the two vehicles.  He was clearly visible to them, and he did not see them take any evasive tactics to avoid him.  He, as a patrol officer, always

3

watches for traffic violations, but no one told him to watch for a traffic violation in this case.  He stopped the vehicle for following too closely.  When he asked defendant, who was the driver, for his license, he was very nervous.  His hands were trembling, his voice was shaking, and he kept looking behind the officer's shoulder.  When the officer stopped the vehicle, he observed a pocket knife in the center console, although he agreed that there was nothing illegal about the possession of the knife at that point.  He asked defendant and Vonnie Young to step out of the vehicle, for his safety, just based on the presence of the pocket knife.  When he observes anything that might be used as a weapon, he pulls the occupants out of the vehicle.  Officer Holmes took Mr. Schaffer out of the back seat.  Officer Shook pulled defendant and Ms. Young over to the curb, which he described as a "point of disadvantage," and asked them to sit down, away from the vehicle.  He did not pat them down at that point, but Mr. Schaffer was being patted down, as he was the individual who was alleged to be carrying the drugs.  Defendant was not free to leave at that point, because a Terry stop was still being conducted.   He would have been stopped had he tried to leave.  The officer ran his driver's license, which did not turn up any warrants.  Defendant was frisked after the drugs were found on co-defendant Vonnie Young.  The time that elapsed for the stop was fifteen minutes at the most.  During the search, he did not believe any drugs were found on defendant, but approximately $1500.00 was found on him in a separate wallet.   The officer did not have any knowledge of defendant being involved in a drug transaction except for the fact that he was driving the vehicle.  The officer agreed that the individuals were cooperative.

On cross examination, Officer David Holmes, of the COMET Drug Task Force and the Republic Police Department, testified that he received information on June 23, 2005, about the drug transaction that was expected to happen later that day.  He did not indicate any past involvement

with this confidential informant in his report, but he has used the individual in the past, and he had proven reliable. He stated that he was told about "Ray," who was supposed to be coming into Republic for a drug transaction. The last information he had from the confidential informant was that Ray would be by himself in a green Chevy Cavalier, which had been wrecked in front, that he would be coming from Springfield, and that he would run if stopped. Officer Holmes was not at the scene when the Toyota Camry pulled up. Officer Shook called him and told him that the Camry pulled up and that the occupants approached the confidential informant's vehicle. He agreed that his report indicated he was there at the time the vehicle pulled up, he stated that he'd made a mistake in writing the report and he actually arrived after the Camry had pulled up. He acknowledged that the vehicle did not match the description of the vehicle they were watching for, but the officers continued to watch the Camry because the occupants approached the confidential informant's vehicle. Officer Holmes did not recall what means they used to identify Ray Schaffer. They did not have any information regarding defendant or Ms. Young. Until he received the cell phone call from the confidential informant, they did not have any information confirming that Mr. Schaffer was in the vehicle. The informant did not provide any information regarding the other two individuals. The informant told him that Ray was in the back seat and he still had the drugs. Officer Holmes called Officer Shook and told him he needed to stop the vehicle. He thought they had probable cause based on the fact that Mr. Schaffer had an outstanding warrant and they were told he had drugs on his person. Officer Shook thought, however, that he would pull them over for the traffic violation. He told Officer Shook to pull them over, which he did, on the basis of the traffic violation. Officer Holmes saw no evasive action on the part of the individuals in the vehicle. He testified that Mr. Schaffer appeared nervous and did not have any identification. He performed a

5

frisk on him, and eventually found a baggie of what he believed to be methamphetamine. After this occurred, he had Officer Shook pull the other individuals out of the vehicle. They were not free to leave at this time. Defendant was not told that he was free to leave and was not told that he was under arrest. All they knew about him at that time was that he had committed a traffic violation.

It is defendant's contention that, in examining the totality of the circumstances, the officer did not possess a particularized and objective basis for suspecting legal wrongdoing necessary to validate the stop. He contends that the stop was unlawful and pretextual because the information they received regarding a drug transaction to occur at the Express Lane did not corroborate with the events that actually occurred; that even though the facts did not create a basis to suspect criminal activity, the officers followed the Camry and pulled it over based on their hunch. Further, he asserts that none of the events that ensued after the Toyota left the Express Lane were sufficient to justify a traffic stop because the officers did not specify the factors that would indicate that the vehicle was following too closely under Missouri law.

Defendant also asserts that there was insufficient evidence to justify detaining him and expanding the scope of the search beyond the initial traffic violation. Defendant asserts that the reports written by the officers were inconsistent in their description of the events that lead to his removal from the vehicle, and therefore, that there was not a sufficient basis to detain him. He contends that the evidence and his statements should be suppressed because of the unlawful investigatory stop and detention.

The government contends that the stop was valid because the officers had reasonable suspicion that criminal activity was afoot inside the Toyota in the form of drug trafficking, and because the driver had committed a traffic violation. It is asserted that, although defendant

6

complains that the report did not specifically delineate the factors in which a violation of following too closely occurs, the issue for the Court to consider is whether the officer's actions were objectively reasonable under the circumstances. Further, it is asserted that the officers had a reasonable suspicion of criminal activity. Regarding the search itself, the government asserts that the pat-down search of the passengers and the detention of defendant were legal as part of a <u>Terry</u>-type stop and search. This is based on the plain view observation by the officers of the weapon inside the vehicle, as well as the plain view observations of methamphetamine on Schaffer, and on the search incident to the arrests Schaffer, Young, and defendant.

Having reviewed the cross-examination testimony adduced at the hearing in this case, as well as Exhibit 2, the transcript of the Vonnie Young hearing, the Court again concludes that there was a valid traffic stop in this case, for the reasons previously delineated. <u>Young,</u> 05-3142-02-CR-S-DW, at 7-8.

Further, the Court is convinced that the record amply supports a finding that Officers Holmes and Shook acted within the parameters of a valid <u>Terry</u> stop regarding the temporary detention and search of defendant. <u>Terry v. Ohio,</u> 392 U.S. 1 (1968); <u>United States v. Cummins,</u> 920 F.2d 498, 502 (8th Cir. 1990). The officers testimony on cross-examination at the hearing in this case leads to the conclusion that, for officer safety, it was reasonable for the officers to remove the occupants from the vehicle after having seen weapons in plain view. Having done so, bags of methamphetamine were observed in plain view, falling out the bottom of Vonnie Young's pant leg. Further, upon a frisk of Ray Schaffer, the individual identified by the confidential informant as being in possession of methamphetamine, more drugs were found. At this point, the officers had the legal authority to pat down defendant, who was driving the

7

vehicle. In the course of doing so, a large amount of cash was found in a separate wallet. Under the totality of the circumstances, it is clear that the officers had probable cause to conclude that all three individuals were involved in the sale and/or distribution of methamphetamine, and probable cause to arrest all of them, defendant included.

Based on the totality of the evidence, the Court finds that the officers had the legal right to stop the vehicle, to detain defendant, and to conduct a pat-down search of his person, as well as to conduct a search of the vehicle, incident to the arrest. Accordingly, there is no basis to suppress the evidence, nor defendant's statements. Therefore, it will be recommended that the motion to suppress be denied.

For the foregoing reasons, it is, pursuant to the governing law and in accordance with Local Rule 72.1 of the United States District Court for the Western District of Missouri,

RECOMMENDED that defendant's Motion to Suppress be denied.

 /s/ James C. England
JAMES C. ENGLAND, Chief
United States Magistrate Judge

Date: December 19, 2006

8